Good morning, your honors. Are you ready? You bet. May it please the court, my name is Britton Akin from the Brenton Akin Hanson Law Office of Jury Steering. I'd like to reserve five minutes for rebuttal. So I'd like to direct my argument first to some of the inquiries the court indicated. So the court had expressed some interest in this common enterprise theory of probable cause when it comes to a group of people. The Supreme Court's Pringle case is the big case here. Now this court has actually distinguished Pringle when it comes to allegations against a group and limited that case to essentially confined spaces where there's some sort of an inference of crime based on what is happening there. So in Pringle, you have for one... Can I get back to when you said this court has distinguished, are you speaking of Santo Prieto? Yes, your honor. So that's a 2023 case. It was actually first published in 2017. It was amended and then they republished it again. So do you think that the... so you're gonna have to be clear about exactly what you're relying upon and tie back, I don't want to get in the way of your argument, but you're gonna have to tie this back to show what the officers would have been on notice of, okay? Whether you do that at this point in your argument or later. Sure, yeah. Well, I was getting to the Santo Pietro case and there, this court stated that in Pringle, you had a car, which is a small intimate space. You had drugs, contraband, and not just drugs, but you also had the money and you had it separated in a way that indicated drug dealing. And the court in Pringle also said, because nobody wanted to admit that there was three people in the car, nobody wanted to admit to possessing those things, that the court could infer based on the proximity to the drugs and the money inside that closed space, that they're a part of a common enterprise. The court did not say, well, anytime you have three people in a car or anytime you have three people together, that it's a common enterprise. In fact, it starts by reaffirming Ibarra. Right. It starts by reaffirming that rule. Proximity, they say propinquity, I don't know why they use that word. But anyway, proximity is not enough, right? Right, exactly. It starts by reaffirming that. Then we have the circumstance. And the way I think of this case, this is for both, benefit of both of you. So you can respond and tell me what you think I'm missing. But had there been one person in the car in Pringle, no question there'd be probable cause, right? Correct. No question. So the only difference is it's three in the morning, there's drugs and cash in the car, and there's three individuals and nobody's sussing up, right? That's correct. And so the court had to infer this common enterprise, an association between sort of conspiratorial-like membership in a conspiracy-like group. And the way they did that was to say, it's three o'clock in the morning, drug dealers don't typically allow other people into their cars, innocent people who would be able to testify against them. Right. And so from that, they've got this rule that comes out of Pringle, which I see as an exception to IFARA. Right. And it was a very fact-specific analysis. The court in Pringle did not announce like a general rule, like, okay, now we have conspiratorial liability for probable cause. But they do seem to rely on this proximity in the car and the notion that those circumstances put just people in a bar, in a bar. That wasn't enough in a bar. These folks are in a car at three in the morning. And the rationale seems to be that drug dealing is happening. There's probable cause certainly to believe that drug dealing is happening. And typically, it's reasonable to assume that typically a drug dealer wouldn't allow an innocent person in there because that person, they speak to this, that person could testify against them. Right. In that confined space, they would not allow just innocent people to be privy to their legal activities. Right. So we've asked you to be ready to speak to Pringle. So how does that map onto the facts of this case? Well, this is not a car. This doesn't involve contraband. Gonzalez, Arcega, and Martinez, no contraband involved. In fact, it's not even clear on the face of the facts that there's arguably probable cause for the crime they're alleging, witness intimidation. And that's not even getting to... Well, if we find that there is probable cause, just for the sake of advocacy, as to Gonzalez. Sure. And I guess maybe as to Michelle, who's now pled guilty and is out of the picture. But we have the incident of this group of four people, one of whom was apparently seen, I'll just use the words, pointing a cell phone in the direction. And the other person who's blurted something out, that it was interpreted as a threat coming back into the courtroom. Then we have two other people who didn't do either one of those things. Right. Nothing. And in fact... Well, except arguably be in association with the other one. So what about that? Well, a mere association, this court and California courts, and pretty much every has consistently held is insufficient for conspiracy liability. We have to distinguish it from Pringle because that's the United States Supreme Court. Right. So we still have a bar up, proximity is not enough. So how do you distinguish from Pringle? It's not a car, I understand that. Well, to distinguish it from Pringle, we're in a public space here, inside a courthouse. So this was the court's reasoning in Santo Pietro, is there on a sidewalk in that case. You have another case from this court from 2005, United States v. Collins, where it's a guy who shows up at, I believe, a strip mall. And this guy, on the facts of that looked at the facts as they were on the record. And they said, you know what? All it shows here is that this guy walked into the strip mall. And even though the officers had some circumstantial evidence, this might be the guy that we're expecting, there was nothing that actually tied him to the events that they were investigating. And this court said that's insufficient under... Well, that was under Pringle. So we're still talking about this common enterprise stuff. I think it's Pringle that also talks about, is it DeRay? Yeah. I'm not sure how to pronounce that case either. DeRay. And so that case seems to be an exception to the exception, where there is a group, but the police could identify, once they identify that they can single out the person in the group, then there isn't any longer a reason to reasonably suspect the whole group. And DeRay... So when I try to map that onto the facts of this case, there were four out in the hallway. Well, we started with five family members. One of them didn't leave the courtroom. Then there were four in the hallway. Then, again, to play devil's advocate, because you're the guy at the podium, we'll do it the other way in a minute when I'm speaking to the government's lawyer, but there's reason, I think he would argue, to suspect probable cause as to Gonzalez and as to Michelle. But what about the other two? Well, there's nothing in the record that indicates the other two did anything. The only thing that's there is that, well, that they're there. The video, it's a Pelley's contention. If the notion is witness intimidation, have they singled out those two? That's what I'm trying to get at. That's what I'd like you both to address. So I believe what DeRay, which predates Pringle, I think most of the cases here is from 1948, that case is talking about an informant singling out somebody. And the way this court has singled a person out, it can't just infer from that person's association with the group that the whole group is guilty. So then that negates, the way you're interpreting DeRay, which I'm pleased to know, and neither one of us know how to pronounce the name, that that negates the assumption, that's my word, that that could have arisen under a Pringle situation. Right. It's an exception to the exception. Yes. I think it's fair to think of it that way. So if they didn't have any idea who was involved, and suppose there was no video, but somebody made the accusation against the whole group, then I suppose for the sake of argument, then we can get into this Pringle line of inquiry about, okay, well, is it a common enterprise? But in here, we do have the benefit of the video. And the video shows that, and I'm not conceding that Lydia was doing, I don't think she was pointing the camera, she was looking at her phone. And you think that your brief actually shows what? It's really hard to see anything in that video. Well, that she is looking at her phone, but as far as who she's pointing at, or if she's pointing at it at all, that's the disputed fact. So that's an example of how, when you can look at a video, two people can see the same image, and then draw a different inference from what they're seeing on the video. And that's what's reserved for the jury here. I think your client's position is that their side of the story, which I think came out at depositions, is that somebody else was pointing the camera at them first. Yes, that's what the video shows. So my question, counsel, is did the arresting officers know that at the time of the arrest, or did that only come out later? As I said, I think the record sites that I saw were to deposition testimony far weeks later. At the time of the arrest, was that known? Yes, that's what they told the deputies, the courtroom deputies. And for whatever reason, that was not... No, my question is whether the arresting officers knew that. Did the arresting officers know that? I believe... I can get back to you. I don't want to make a misstatement here. I'm not 100% sure, but it's my understanding that when they told the deputies, they were telling the arresting officers, and they were part of that group that arrested them. And then I want to get out of the way, because I'm asking far too many questions, but I'm just going to ask one more. Sure. Is there any dispute about whether your clients were interviewed prior to being arrested? No. Individually questioned? Individually questioned. No dispute that I'm aware of. What's that mean? In other words, but is it a yes or no? Your clients took the position that they weren't interviewed prior to being arrested. Is that your argument today? That's their contention? Yes, yes. I'm sorry. And you think that is not a contested point? No. Okay. Judge Sung, I haven't let you or Judge Tashima get in a word edgewise. Do you have other questions? I would like to... Real quick, about conspiracy, this court had a question about this Ware case from 2022, and it's specifically about whether an overt act can be imputed to a whole group. But I just want to point out that, as stated in Ware, there's actually four elements for conspiracy liability that they enumerate, and the overt act is just the fourth. There are two that require specific intent. And the longstanding established law of this circuit is that when you arrest somebody for a specific intent crime, you need probable cause, not just for the whole offense, but for specific intent. And we have two elements here, specific intent to agree to the conspiracy and specific intent to commit the offense. Those are the two. What do we make of the fact that Pringle, though, uses this common enterprise, this looser association? That would be the Supreme Court's rule with regard to Fourth Amendment, probable cause. And this is just with regard to the crime itself. So when you're talking about probable cause, they're just talking generally about what you need to seize somebody. But here, we're talking about California law. So they're interrelated concepts, a lot of overlap, but I guess they are technically distinct, and there were two questions that the court asked, so I want to... You wanted to reserve some time? Yes, I did. Yes. Thank you, Your Honors. Counsel, whenever you're ready, we're ready. You can hear and see fine, I hope, still. But... Yes, I can. You're off mute, so go right ahead. Good morning, Your Honors. May it please the Court. My name is Matthew Peters, and I'm appearing on behalf of the appellees in this case. Appellees contend that Maryland v. Pringle, that decision does support the District Court's grant of partial summary judgment as to Mr. Arcega's and Ms. Martinez's false arrest claim. This is not a case where an arrest was made based on mere presence or companionship or propinquity. It is a factor to be considered in assessing the reasonableness of a seizure, and the facts here establish more than just proximity. And as the United... As this Court pointed out in the United States v. Hilson case, one important circumstance to consider in the probable cause analysis is whether the arrestee's association is contemporaneous with the criminal activity. Can you deal with... Can you deal with the... D. Ray and Pringle's discussion of that, and saying Pringle limiting itself when officers can identify with particularity who is engaging in the alleged misconduct? Certainly, and I believe this case is distinguishable from Ibarra and D. Ray on a similar ground that the Pringle Court articulated. Here, all of the appellants were standing together as a group. They were there for the same purpose, to support Daniel Gonzalez, Jr., who was on trial for a gang-related murder. They were next to Michelle when she made that snitching comment, and they were next to each other when appellees received reports that the appellants were either witnesses or their family members. So unlike in Ibarra, it's not just appellants' mere presence that led the detectives to reasonably believe that there was probable cause to arrest for witness intimidation. The detectives have a reasonable basis to believe that each of the appellants had attempted to intimidate a witness in some manner. Because the report was that the whole family was taking photos? Correct. Ms. Phipps, the mother of one of the prosecution's witnesses, reported to Detective Beagle and to Detective Garcia that the Gonzalez family members in the hallway were taking photographs of the prosecution's witnesses. And Ms. Reyes described each of them individually. Okay, so the police officers have a duty to investigate exculpatory evidence, right? That's not contested, is it? They have to consider exculpatory evidence as well, yes. We cannot ignore exculpatory evidence, that's correct. So I'm concerned that months later, I think, if I'm reading the record correctly, months later the family members, the Gonzalez family members, report that they were concerned that someone was taking pictures of them first, and they have also taken the position that the police officers did not interview them, didn't ask them before arresting them, and that they offered their phones. So if, and I think that's contested, I think at least part of that is contested. Certainly there's dispute about whether their phones were considered, whether they looked at the phones or not. But if at trial the jury were to decide that that evidence wasn't considered, would the defendants be entitled to qualified immunity? I believe so, Your Honor. An officer is not obligated to accept an arrestee's innocent explanation for what occurred. Only one of the appellants, I believe it was Richard Arcega, told the arresting officer once he had already been arrested that an African-American gentleman was pointing a phone in his direction. This was not reported prior to their arrest, and it is not, in our opinion, and the appellees would submit that it is not a crime for this African-American man, even if he did, to point a phone in their direction, because appellees submit that the Gonzalez family members and friends that were there that day were not called in the murder trial. And it does not negate from the fact that appellee's actions were taken in a manner that would reasonably lead an officer to believe that witness intimidation was occurring, especially in the context of a gang-related murder trial. Right, so again, I want to focus, I just want to make sure I'm understanding your comments correctly. I'm focusing on the two witnesses, not on Michelle or Gonzalez. As to those two, your position is that it was a reasonable inference that there was this sufficient association, right, to suspect that they were engaged in witness intimidation, and your best shot at that is what? Well, Your Honor, it was reported to the detectives that each of them were holding their phones and pointing them in the direction of witnesses. Can you not put your own gloss on what exactly was reported and give me an exact quote that says each of them were taking photos? Your Honor, I believe I can refer you, but the report states that it was reported to the detectives that the Gonzalez family members were taking photographs of the witnesses and the victims. Okay, at the time of arrest, before arrest, someone had viewed, an officer had viewed the video. That's correct. And if I recall correctly, the officer reported that they saw one person lift their phone. That is correct. At that point, didn't the officers know that not all four people were taking photos, but only one? Your Honor, that same report, or that same officer that reviewed the surveillance footage and reported her findings, stated that the video was unclear as to what Apelles Arcega and Apelles Martinez were actually doing in that video. It is very, and Detective Vigel later... They need a probable cause that they were doing something, right? So there's, at that point, it seems to me that the officer knows there's nothing showing in that video that they are actually participating in the taking of photos. But we would submit that there's nothing in the that shows that they were not taking photos. It is very unclear what Mr. Arcega and Ms. Martinez are doing in the video, just based on the quality of the video itself. So, Apelles would submit that it neither corroborates or exonerates the reported actions that they were holding their phones up in a manner suggesting that they were taking that video, or that they were not taking photos, or that they were not participating in the  And then, it goes on to explain that she reported that she was frightened, and so forth. So, this is plural. I'll grant you that. But it strikes me as... It's a very diffuse comment. There are five, I think, just five family members present, one of whom was in the courtroom the So, how is it that the officers aren't charged with the duty to talk with the family members, or to follow up? This is the genesis of my question. According to the family members, the police officers didn't look at their photos. I mean, didn't look at their phones to see whether they had taken photos. That's correct. At the time of the arrest, the officers had not reviewed their cell phones. And so, I will address the two issues Your Honor just raised. The first being that the Gonzalez family members in the plural. Detective Beagle did speak to the other mother of one of the witnesses, Ms. Reyes. And he asked Ms. Reyes, which Gonzalez family members was Ms. Phipps referring to that were taking photographs? He asked which ones? He asked which ones? Yes. And Ms. Reyes identifies Lydia Gonzalez by describing her appearance. Also describes Mr. Arcega. Also identifies non-party Michelle Gonzalez, as well as Yesenia Martinez. Is that in her declaration? Or in Reyes, sorry, in Officer Garcia's declaration? That's in Detective Beagle's declaration, or his report attached to his declaration. Detective Beagle. Okay. Thank you. And then as to the second, regarding whether or not they searched the photographs at the time of the arrest, they had not. And as I, as Apelli stated in the brief, intimidation in this context can occur regardless of whether photographs are taken or not. The mere act of holding a cell phone in the direction of witnesses and their family members is an intimidating act in and of itself. Based on the detective's background and training and experience in these particular types of cases where they are not, where it is not uncommon for individuals associated with either the defendant or the prosecution to take photographs of witnesses cooperating with law enforcement, or at least to give the appearance that they are doing so, to intimidate them so that they will not provide testimony against the accused. And furthermore, it's not, there are social media applications where you can transmit photographs that are not saved to your phone. And so I think there is a reasonable basis for not having conducted the search of the phone at that time, especially given the fact that these are detectives, they're not, the record is devoid of any information that they are specialists in these type of forensics examinations. And so we would submit that it was entirely reasonable to arrest based off the witness reports of the family members taking photographs, combined with the fact that they are with Michelle Gonzalez when she made that snitching comment. And at that point, that is, it's undisputed that her conduct was a criminal act. And based on them not having dispersed from Michelle Gonzalez following that, they were on notice of what she did, and they continued to remain as a group. They entered the courtroom and sat together. And at that point, Liddy Gonzalez took out her phone and opened court when she testified that she knew that was not allowed. And she starts going through her phone, at which time the prosecution or the prosecutor took her phone or removed her phone and put it on the bailiff's desk. And so we believe that, I'm sorry, the appellees believe that the Pringle Court, while maybe not confined to a vehicle, the rationale is still applicable here. In all, sorry, I mean, we're in trouble with it. I just want you to be able to address it. All the cases where I find that the court is finding probable cause and based on association, the evidence of the criminal activity is much more clear. And there's circumstance, the court is distinguishing circumstances in which the association is, and the nature of the crime, and the court says the nature of the crime was one in which we would expect a conspiracy or, and common enterprise. This is generally drug trafficking, right, where there's multiple people need to be involved and their circumstances under which, you know, it's a car, it's a drug deal happening and one that's expected. Here we have a public place where people are, they have a right to be there, right? They have, they're engaged in an activity that is commonplace. Every day, people are walking around looking at their phones, right? So I have a little bit of trouble saying, you know, just based on such in a public place where people have the right to be based on the perfectly innocent, possible innocent explanations for what they're doing, right, that there's, you know, going and a video that shows at best, maybe only one person engaging in the alleged activity, that there's probable cause to arrest the whole group without the police have done any more. In your honors, correct. In most, in most circumstances, being in a public place, holding your phone out is completely normal. But this is a very sensitive trial involving allegations of gang members retaliation. And we have the Gonzales family members and friends there that day, you know, standing in the hall, one of them is saying, you better stop snitching to one of the prosecution's witnesses, family members. And then we have a video showing at least Lydia Gonzales holding up her phone in the, in the general direction of where these witnesses receded. And I would argue that while not known to the officers at the time, your honor, after the fact officers had discovered text messages between Lydia Gonzales and another family member, stating to bring your phone to court tomorrow, we need to record a rat. Except they didn't know that then. So we're trying to be, we have, we're time traveling here. And that wasn't known at the time, right? Correct, your honor. I'm just trying to address the earlier question about this is not a crime of a, of a joint enterprise nature. And I would just, I'm just trying to point out that there is coordination in these types of crimes, as is evidenced by later learned information. Well, there could be. And the question is, did they have probable cause to believe that here? I've just checked back at the declaration of what I, the Beagle declaration. There's actually two reports by this person and one of the two officers and it's paragraph six describes the four individuals. You're correct. So I want to be clear that I've gone back to look at that. And I have that. I'm sure you're both of it and probably way ahead of us. This is the paragraph about the striped shirt of the cowboy hat and the individual descriptions that I'm sure you're both aware of. So I've got that. And I think the focus then is going to be on this other problem, which is not talking with these folks, not looking at the cell phones prior to the arrest. And did you, did you want to speak to that? Your time is drawing to a close. So I remain concerned about knowing what they knew at the time. Why is it fair to infer that these all, that all four people were involved in that activity, sir? Your Honor, as far as interviewing them at the scene, I would point the court back to Pringle, where all three individuals denied having any knowledge of why the. Forgive me for interrupting because that's just it. There's a duty to consider exculpatory evidence. And my problem is, I just want to put a fine point on this because we keep circling around it. I fully appreciate that they had a report from the, I'll just say the victim's family member, but there is a duty to do some investigation, certainly to consider exculpatory evidence. And I think it's uncontested they didn't ask these people. They didn't know at that time that these people, the Gonzalez family, had perceived that someone else had been pointing a phone at them. And then there's this dispute about looking at the telephone. So what's the county's best response to this? Why was it not necessary to do that? Your Honor, as far as not interviewing them there, it was clear that they made, you know, they told the detectives they did not point a photograph or to not take photographs of the that, as I stated earlier, the mere act of pointing a phone in their direction in this context is an intimidating act. And that an officer cannot ignore readily available exculpatory evidence that that is conceded. But again, I don't think the detectives were in a position at that time to comb through each of their phones. And even if there were not photographs found on those phones, I think appellees would submit that there was still probable cause to arrest because it was reported that they took an action that was intimidating in the context of this murder trial. Okay, so going all the way back to Pringle, these people weren't in a car together. The four Gonzalez folks were not in a car together. And we talked about this Pringle theory requiring an association, a sort of membership, I'll use the word membership in this group, to commit this crime of witness intimidation. And you're relying for that on the fact that, I think it's Ms. Phipps, but at any rate, Reyes reported that all four of them were engaged in the activity. Is that it? Yes, Your Honor. And an officer has no obligation to, essentially the probable cause analysis is not affected, adversely affected, by a suspect's kind of innocent explanation or denial of the crime for which they are accused. All right. Thank you for your patience with our questions. We've taken you three and a half minutes over time. I appreciate that. Thank you, Your Honors. I'd just like to point out that appellees seem to want it both ways on a lot of issues. When it cuts against them, then all of a sudden, when, you know, you talk about the video resolving a dispute, all of a sudden, when it seems to cut against them, well, then it's too unclear. Same thing with somebody pointing a cell phone in the hallway. We heard counsel admit that the African American male who can be seen on the video at Excerpts of Record 37-1102 AM, that gentleman who's clearly pointing a cell phone at the party, well, that's not witness intimidation. Even though Daniel Gonzalez's family members and associates, they could be called as witnesses conceivably in this trial. Why is that not witness intimidation? But when Lydia Gonzalez does, when she merely looks at her phone, that's all of a sudden witness intimidation. So it seems like appellees want to have it both ways. It's innocent when they do it, but it's severely inculpatory when Lydia Gonzalez does it. Another thing that counsel said is there's cases saying that somebody's companionship and propinquity to a group can be evidence of a common enterprise or a conspiracy. I'm having trouble differentiating that from mere association. How is that not mere association? That's the only fact you have. And that's the only fact you have here. This really comes right down to it. I think we've been poking on this all morning, and the best evidence that I see, there's some evidence that I think Judge Sung and I have both referred to that does not implicate the whole group. There is the Reyes Report through the Beagle Second Declaration that says the family members, four family members, and then describes them. What about that? That's the same thing as just identifying the whole group. Well, she says that the family members, plural, were taking photos. Yeah. If you say the family members, you're identifying the group. You're saying that this group did something. She's not going into detail about the specific members and all that Mr. Beagle's report. That's not exactly... As far as what her actual testimony was, I believe there was some differentiation there. And even so... Can you point us to that? Is there any evidence that police asked her for more specifics on what she saw or to describe who... I would have to go back and look at the record and the 15 seconds I have. I'm not sure that would be... And they did, the arresting officers, asked one of the responding officers to go look at the video. And that officer reported back that Gonzalez was seen pointing. But I think only Gonzalez. That was my point, is that regardless of whoever said, whatever conflicting reports there were, there is a video that even though it's not a perfect video, it does resolve some dispute about who was doing what. In other words, you can tell very clearly that Mr. Arcega and Ms. So at least that much is clear. Anything further, Your Honors? I don't know. I guess not. Thank you both for your argument. That concludes our arguments for the day. We'll stand in recess. Okey-dokey.
judges: TASHIMA, CHRISTEN, SUNG